**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **NICOLE MAY HARDY,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **CIVIL ACTION NO. 20-00166-B** |
| | * | |
| **KILOLO KIJAKAZI,**[1] | * | |
| **Acting Commissioner of** | * | |
| **Social Security,** | * | |
| | * | |
| **Defendant.** | * | |

**ORDER**

Plaintiff Nicole May Hardy[2] ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* On April 6, 2021, the parties consented to have the undersigned Magistrate Judge conduct any and all proceedings in this case. (Doc. 18). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and

---

[1] The Court takes judicial notice that Kilolo Kijakazi is now the Acting Commissioner of Social Security. Accordingly, pursuant to Fed. R. Civ. P. 25(d), the Clerk is **DIRECTED** to substitute Kilolo Kijakazi, Acting Commissioner of Social Security, as the Defendant in this case.

[2] Plaintiff's filings in this case list Plaintiff's name as Nicole May Hardy. (See, e.g., Doc. 1). However, the certified administrative record from the Social Security Administration lists Plaintiff's name as Nicole Mae Hardy. (See Doc. 11).

Federal Rule of Civil Procedure 73. (Doc. 20). Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

## I.  Procedural History[3]

Plaintiff protectively filed her application for benefits on October 26, 2016, alleging disability beginning June 15, 2012, based on status post cervical discectomy with fusion, bulging discs, migraine headaches, pain and numbness, falling, weakness, depression, anxiety, degenerative disc disease, and bad shoulders. (Doc. 11 at 65, 166, 178, 182). Plaintiff's application was denied at the initial stage. (Id. at 106, 110). Upon timely request, she was granted an administrative hearing, which was held on October 1, 2018. (Id. at 61, 118, 135). Plaintiff, who was represented by counsel, attended the hearing via video conferencing and provided testimony related to her claims. (Id. at 61-94). A vocational expert ("VE") also testified at the hearing. (Id. at 91-95). On January 30, 2019, the Administrative Law Judge ("ALJ") issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 16-27). The Appeals Council denied Plaintiff's request for review on January 10, 2020; therefore, the ALJ's decision dated January 30, 2019, became the

---

[3] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

final decision of the Commissioner.   (Id. at 4).

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action.   (Doc. 1).   The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.   Issue on Appeal

**Whether the ALJ erred in evaluating Plaintiff's complaints of pain?**

## III. Factual Background

Plaintiff was born on October 25, 1974, and was forty-three years of age at the time of her administrative hearing on October 1, 2018.   (Doc. 11 at 65).   Plaintiff has a high school diploma but no higher education.   (Id. at 65-66).   She is married and has two children who were teenagers at the time of her hearing.   (Id. at 72, 167).   Plaintiff last worked as the "house manager" of a large private residence from 2011 to September 2016.[4]   (Id. at 66-68, 170, 199-200).   Before that, Plaintiff worked in the customer service department of a grocery store from 1998 to 2004.   (Id. at 199, 201).

Plaintiff testified that she is unable to work because of migraine headaches and pain in her neck, left shoulder, and lower back.   (Id. at 69-70, 75, 84).   Plaintiff underwent an anterior

---

[4] The position involved cleaning, cooking, washing dishes, doing laundry, swimming pool maintenance, shopping, and performing and scheduling repairs.   (Id. at 66-68, 200).

C5-C7 cervical discectomy and fusion in January 2013.  (Id. at 247, 878).  Since then, treatment for Plaintiff's neck has included injections, physical therapy, medication, and a radiofrequency ablation.  (Id. at 225, 230, 236, 238, 240, 560, 780, 865, 871, 886-87, 889-90).  Plaintiff underwent a rotator cuff repair and soft tissue biceps tenodesis in September 2016, and she has also received injections and medication and undergone physical therapy for her left shoulder.  (Id. at 228, 235, 460, 478, 733, 742). Plaintiff's migraines have been treated with medication and injections.  (Id. at 650, 874, 878, 881-82).

**IV.  Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the correct legal standards were applied.[5]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235

---

[5] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

(11th Cir. 1991).  "Substantial evidence is more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  In determining whether substantial evidence exists, a reviewing court must consider the record as a whole, taking into account evidence both favorable and unfavorable to the Commissioner's decision. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, at *4 (S.D. Ala. June 14, 1999).

## V.    **Statutory and Regulatory Framework**

An individual who applies for Social Security disability benefits must prove her disability.  20 C.F.R. § 404.1512. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); see also 20 C.F.R. § 404.1505(a).  The Social Security regulations provide a five-step sequential evaluation process for determining whether a claimant has proven her disability.  See id. at § 404.1520.

Under this process, the claimant must first prove that she is not engaged in substantial gainful activity.  Carpenter v. Comm'r

of Soc. Sec., 614 F. App'x 482, 486 (11th Cir. 2015) (per curiam).[6]
The second step requires the claimant to prove that she has a
severe impairment or combination of impairments.  Id.  If, at the
third step, the claimant proves that the impairment or combination
of impairments meets or equals a listed impairment, then the
claimant is automatically found disabled regardless of age,
education, or work experience.  Id.  If the claimant cannot prevail
at the third step, the ALJ must determine the claimant's residual
functional capacity ("RFC") before proceeding to step four.  Id.
A claimant's RFC is an assessment, based on all relevant medical
and other evidence, of a claimant's remaining ability to work
despite her impairments.  Lewis v. Callahan, 125 F.3d 1436, 1440
(11th Cir. 1997).

Once a claimant's RFC is determined, the evaluation proceeds
to the fourth step, where the claimant must prove an inability to
perform her past relevant work.  Carpenter, 614 F. App'x at 486.
If a claimant meets her burden at the fourth step, it then becomes
the Commissioner's burden to prove at the fifth step that the
claimant is capable of engaging in another kind of substantial
gainful employment which exists in significant numbers in the

---

[6] Federal Appendix cases are unpublished Eleventh Circuit opinions
and are not considered binding precedent, but they may be cited as
persuasive authority.  11th Cir. R. 36-2; Henry v. Comm'r of Soc.
Sec., 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases
printed in the Federal Appendix are cited as persuasive
authority.").

national economy, given the claimant's RFC, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985) (per curiam).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the burden then shifts back to the claimant to prove her inability to perform those jobs in order to be found disabled.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

## VI.  **The ALJ's Findings**

In the case *sub judice*, the ALJ found that despite Plaintiff's allegation of disability beginning June 15, 2012, she engaged in substantial gainful activity during the years 2013 and 2014.  (Doc. 11 at 18).  However, the ALJ determined that there was a continuous twelve-month period during the relevant timeframe in which Plaintiff did not engage in substantial gainful activity; thus, he proceeded to step two and noted that his remaining findings addressed the periods during which Plaintiff did not engage in substantial gainful activity.  (Id. at 19).  At step two, the ALJ found that Plaintiff has the severe impairments of degenerative disc disease of the cervical and lumbar spine, tendinopathy of the left shoulder, and migraine headaches, as well as the non-severe impairment of anxiety.  (Id. at 19-20).  The ALJ found that Plaintiff's impairments, when considered individually and in combination, do not meet or medically equal the severity of any of

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Id. at 20-21).

The ALJ next determined that Plaintiff has the RFC to perform a range of light work with the following additional limitations: she is precluded from overhead reaching but can frequently reach in all other directions; she is precluded from climbing ladders, ropes, and scaffolds; she can frequently climb ramps and stairs; she can occasionally stoop, kneel, crouch, and crawl; and she must be permitted to miss one day per month for headaches. (Id. at 21-25). Based on the testimony of the VE and the record before him, the ALJ determined that Plaintiff is unable to perform any of her past relevant work, but that she can perform other jobs that exist in significant numbers in the national economy, such as production assembler, bakery line worker, and call out operator. (Id. at 25-26). Thus, the ALJ concluded that Plaintiff is not disabled. (Id. at 26).

## VII. Discussion

### The ALJ did not err in his evaluation of Plaintiff's allegations of pain.

Plaintiff argues that the ALJ erred by failing to properly evaluate her complaints of pain and the impact of her pain on her ability to work. (Doc. 14 at 2-3). According to Plaintiff, "the ALJ didn't even address [her] claims of pain and its effect on

[her], much less properly address pain in accordance with Social Security Regulations and case law." (Id. at 2). The Commissioner counters that the ALJ reasonably evaluated all the evidence of record, including Plaintiff's subjective statements of her symptoms, the medical treatment record, Plaintiff's activities during the relevant period, and the opinions of the State agency medical consultant. (Doc. 16 at 6-12). The Commissioner further asserts that the ALJ identified valid reasons for finding Plaintiff's statements about her pain symptoms not entirely consistent with the medical and other evidence of record, and that the ALJ's evaluation of Plaintiff's subjective complaints is supported by substantial evidence. (Id.). Having carefully reviewed the record, the Court finds that Plaintiff's claim is without merit.

A claimant's statements of pain or other subjective symptoms alone are insufficient to establish disability. 20 C.F.R. § 404.1529(a); Social Security Ruling ("SSR") 16-3p, 81 Fed. Reg. 14166, 14167 (Mar. 16, 2016).[7] Rather, when a claimant attempts

---

[7] SSR 16-3p, which superseded SSR 96-7p, was enacted to provide "guidance about how [the Social Security Administration] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims . . . ." SSR 16-3p, 81 Fed. Reg. 14166 at 14166. SSR 16-3p eliminated the use of the term "credibility" in the sub-regulatory policy and stressed that, when evaluating a claimant's symptoms, the adjudicator will "not assess an individual's overall character or truthfulness" but will instead focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to

to establish disability based on testimony of pain and other symptoms, she must satisfy two parts of a three-part "pain standard" that requires (1) evidence of an underlying medical condition, and (2) either (a) objective medical evidence confirming the severity of the alleged pain arising from that condition, or (b) evidence establishing that the objectively determined medical condition can reasonably be expected to give rise to the alleged pain. See Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam)).

"If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that [s]he has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on h[er] ability to work." Spears v. Berryhill, 2017 U.S. Dist. LEXIS 160385, at *16, 2017 WL 4340508, at *6 (N.D. Ala. Sept. 29, 2017); see 20 C.F.R. § 404.1529(c); SSR 16-3p, 81 Fed. Reg. 14166 at 14168. "In doing so, the ALJ considers all of the record, including the objective medical evidence, the

---

produce a claimant's symptoms and, given the adjudicator's assessment of the claimant's symptoms, whether the intensity and persistence of those symptoms limit the claimant's ability to work. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1308 (11th Cir. 2018) (per curiam) (citing SSR 16-3p, 81 Fed. Reg. 14166 at 14167, 14171).

claimant's history, and statements of the claimant and her doctors." Strickland v. Comm'r of Soc. Sec., 516 F. App'x 829, 831 (11th Cir. 2013) (per curiam) (citing 20 C.F.R. § 404.1529(c)(1)-(2)); see also SSR 16-3p, 81 Fed. Reg. 14166 at 14168. The ALJ may also consider other factors set forth in the regulations, including a claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness, and side effects of medication; any treatment other than medication; other measures used by the claimant to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. Strickland, 516 F. App'x at 831-32 (citing 20 C.F.R. § 404.1529(c)(3)); see also SSR 16-3p, 81 Fed. Reg. 14166 at 14169-70. The ALJ must then examine the claimant's statements about the intensity, persistence, and limiting effects of symptoms in relation to all other evidence and consider whether they are consistent with the record as a whole. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1308 n.3 (11th Cir. 2018) (per curiam) (citing SSR 16-3p, 81 Fed. Reg. 14166 at 14170); see also 20 C.F.R. § 404.1529(c)(4).

The ALJ is not required to accept a claimant's allegations of pain merely because the claimant has established that her impairment could reasonably be expected to produce her alleged

symptoms.   See Wilson, 294 F.3d at 1225-26.   However, if the ALJ decides not to credit a claimant's statements about her pain, "the ALJ must articulate explicit and adequate reasons for doing so or the record must be obvious" as to the finding.   Strickland, 516 F. App'x at 832 (citing Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995)).   Failure to articulate the reasons for discrediting testimony related to pain or other subjective symptoms requires, as a matter of law, that the testimony be accepted as true.   Holt, 921 F.2d at 1223.   When the ALJ's reasons for discrediting a claimant's statements about pain or other symptoms are clearly articulated and supported by substantial evidence in the record, a reviewing court will not disturb the ALJ's findings.   Foote, 67 F.3d at 1562.

In this case, the ALJ followed the process outlined above in evaluating Plaintiff's allegations of pain and other symptoms. The ALJ had to first determine whether Plaintiff has a medically determinable impairment that could reasonably be expected to produce her alleged symptoms and, if so, to evaluate the intensity and persistence of Plaintiff's symptoms and determine the extent to which Plaintiff's symptoms limit her ability to perform work-related activities.   (See Doc. 11 at 21).   The ALJ described Plaintiff's statements of her symptoms, including, *inter alia*, that she does not get out of bed some days due to pain; that she experiences frequent migraines that started prior to her neck

surgery; that she has persistent neck pain that is worse than her lumbar and shoulder pain but not as excruciating as it was before her June 2018 radiofrequency ablation; that she continues to experience problems with her left shoulder despite surgery; and that her average pain is three or four on a ten-point scale and increases to a nine or ten depending on activity. (Id. at 21-22).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Id. at 22). The ALJ then explained the bases for his finding in his subsequent discussion of Plaintiff's medical complaints and treatment, clinical examination results, radiology findings, medical opinion evidence, and activities and abilities. (See id. at 22-25).

In the discussion, the ALJ reviewed Plaintiff's medical records from her treating pain management physicians, Dr. Michael Harris and Dr. William Gray, as well as the records from the Navy hospital and clinic where Plaintiff received treatment. The ALJ cited objective medical evidence in the form of MRI and x-ray

results and physical examination findings which suggested that Plaintiff's symptoms were not as severe as alleged.[8]

For instance, with respect to her lower back, Plaintiff alleged that she experienced constant lower back pain that limited her ability to stand and only allowed her to sit for up to thirty minutes at a time. (Id. at 75-76). However, as the ALJ noted in his decision, a January 2016 lumbar spine MRI revealed only mild degenerative disc disease without significant change from a prior May 2015 study. (See id. at 23, 243-44). Similarly, as the ALJ observed at Plaintiff's administrative hearing, an October 2017 lumbar spine MRI showed disc desiccation and disc height loss at three levels with associated degenerative change, but there was no mention of bulging or ruptured discs, nerve impingement, or spinal cord encroachment. (See id. at 75, 867). And, findings from physical examinations of Plaintiff's lower back in 2017 and 2018 were overwhelmingly normal, including findings of no deformity; symmetric spine; normal, symmetric, and non-antalgic gait; good base of support; no costovertebral angle tenderness; no tenderness in the paraspinal musculature; and normal range of motion. (See id. at 866, 876, 880, 885, 892). Navy records, which predate the

---

[8] "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." 20 C.F.R. § 404.1529(c)(2).

2017 and 2018 physical examinations, reflect that Plaintiff denied
back pain on many occasions, including in February 2016. (See id.
at 530, 535, 539, 546, 551, 569, 593, 602, 624, 644, 651, 768,
773, 784).[9]  Dr. Gray's records also reflect that Plaintiff denied
that she was only able to walk limited distances.  (Id. at 875,
880).  This of course contradicts Plaintiff's hearing testimony
that she could walk no further than a block before having to stop
because of pain.  (See id. at 77).

With regard to Plaintiff's neck, the ALJ cited a number of
physical examination findings by Dr. Gray.   (Id. at 23-24).
Although Dr. Gray noted decreased cervical range of motion and
positive bilateral facet loading tests in May and June 2018, he
also noted that Plaintiff's cervical spine was symmetric with no
abnormal curvature, and that Plaintiff exhibited no paraspinal
tenderness, negative Spurling's test bilaterally, and good muscle
bulk and tone.  (Id. at 885, 892).  In January 2018, it was noted
that Plaintiff had 5/5 strength in both upper extremities and
negative Spurling's and facet loading tests bilaterally.  (Id. at
866).  Physical examinations done in 2015 and 2016 also included
findings of full strength in both upper extremities, no neck
atrophy, no neck tenderness, and full range of motion in the neck,

_____

[9] The Navy records also reflect that Plaintiff frequently reported
good, very good, or excellent general overall feeling/health,
including as recently as February 2016.  (See Doc. 11 at 532, 534,
545, 579, 592, 601, 610, 614, 618, 623).

albeit sometimes with pain.[10]   (See id. at 226, 230, 531, 539, 753, 761).

The ALJ also considered the treatment Plaintiff received and its effectiveness.  For example, the ALJ recognized that Plaintiff received a number of cervical injections in the years following her January 2013 surgery, and that those injections were quite effective in providing periodic relief.  (See id. at 22-24).  The ALJ referenced the fact that Plaintiff told Dr. Harris that she had experienced two weeks of relief following a C7-T1 interlaminar epidural in September 2014.  (See id. at 22, 235).  After a right C4-C5 transforaminal epidural steroid injection in April 2015, Plaintiff reported 100 percent relief for approximately three weeks, and she reported fifty to seventy-five percent relief from a second such injection.  (Id. at 228, 230).  The ALJ also noted Plaintiff's June 2016 statement that she had experienced seventy-five percent relief for _four to five months_ following a C4-C5 transforaminal epidural steroid injection.  (See id. at 23, 225).  After receiving left C2-C5 medial branch diagnostic blocks in December 2017, Plaintiff reported approximately ninety percent relief and indicated that she would like to proceed with a

---

[10] Those physical examinations also revealed abnormal findings such as positive Spurling's and facet loading tests, paraspinal tenderness, depressed biceps and brachioradialis reflexes, and pain with axial rotation.  (See Doc. 11 at 226, 230, 233, 756, 761).

16

radiofrequency ablation at the same levels. (See id. at 23, 865). After having that procedure in June 2018, Plaintiff reported improvement in her neck pain and headaches. (See id. at 24, 891).

With regard to Plaintiff's migraines, the ALJ cited Dr. Gray's statement in May 2017 that Plaintiff "had 100% reduction of her usual migraine after sphenopalatine ganglion block, which lasted for 1 month and then 2 months later her headaches gradually returned." (See id. at 23, 878). Plaintiff was given another sphenopalatine ganglion block, which, according to Dr. Gray's August 2017 notes, also provided complete relief for one month before her headaches gradually returned. (Id. at 874, 881).[11]

As to Plaintiff's left shoulder, the ALJ noted that the record reflects an improvement in her symptoms following her September 2016 surgery. (See id. at 23-24). On September 27, 2016, it was noted that Plaintiff had experienced some significant postoperative pain, but that it was controlled with medication and was improving. (Id. at 752). In October 2016, Plaintiff reported that she was feeling fine and had no new symptoms. (Id. at 739). Post-surgery physical therapy notes from October and November 2016 reflect that Plaintiff progressed well and was able to perform the prescribed exercises with minor or no complaints of pain. (See id. at 460, 478). Thereafter, Dr. Gray's treatment notes from

---

[11] The ALJ also pointed out that there are relatively few treatment records noting complaints of headaches. (See Doc. 11 at 24).

2017 and 2018 do not reflect any specific complaints pertaining to Plaintiff's shoulder, and Plaintiff denied joint pain and swelling on more than one occasion. (See id. at 865, 874-75, 878, 880, 884-85, 891, 894). Notwithstanding, the ALJ's RFC assessment took Plaintiff's left shoulder impairment into account by limiting Plaintiff to no overhead reaching and precluding her from climbing ladders, ropes, and scaffolds. (See id. at 21, 24).

The record also indicates that Plaintiff's prescription medications are at least partially effective in alleviating her pain. See 20 C.F.R. § 404.1529(c)(3)(iv); SSR 16-3p, 81 Fed. Reg. 14166 at 14169. For example, in June 2016, Plaintiff reported that her medications, including Norco, Flexeril, and Topamax, were helpful for her pain and activities of daily living. (Doc. 11 at 225; see also id. at 230). More recent treatment notes from Dr. Gray similarly reflect that Plaintiff's medications are helpful for her pain and daily activities, and that Plaintiff experiences no adverse side effects from her medications. (See id. at 865, 869, 874, 877-78, 881).

In addition, Dr. Gregory Parker, the State agency medical reviewer, found that Plaintiff's statements regarding her symptoms were only partially consistent with the other evidence on file. (Id. at 103).[12]  Dr. Parker noted that several physical

---

[12] See SSR 16-3p, 81 Fed. Reg. 14166 at 14169 ("Medical evidence from medical sources that have not treated or examined the

examinations on file revealed 5/5 strength in Plaintiff's upper extremities, and that follow-up examinations after Plaintiff's September 2016 shoulder surgery indicated that she was healing well and that her symptoms were controlled. (Id. at 103-04). Contrary to Plaintiff's allegations of incapacitating pain and related functional limitations, Dr. Parker opined that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. (See id. at 104). Dr. Parker also opined that Plaintiff could not reach overhead with either upper extremity due to her status post left shoulder surgery. (Id. at 105). The ALJ discussed Dr. Parker's opinions and accorded them great weight, noting that they were generally consistent with the overall treatment evidence and with the intermittent treatment Plaintiff received during the relevant period. (Id. at 24). The ALJ also found that Dr. Parker's opinions were consistent with Plaintiff's continued work activities during the relevant period, referring to

---

individual is also important in the adjudicator's evaluation of an individual's statements about pain or other symptoms. For example, State agency medical and psychological consultants and other program physicians and psychologists may offer findings about the existence and severity of an individual's symptoms. We will consider these findings in evaluating the intensity, persistence, and limiting effects of the individual's symptoms. Adjudicators at the hearing level or at the Appeals Council level must consider the findings from these medical sources even though they are not bound by them.").

the fact that she continued to perform her variegated duties as a house manager well into 2016.[13]    (See id. at 24-25).[14]

Finally, in explaining his determination that Plaintiff's statements regarding her pain and other symptoms were not entirely consistent with the evidence of record, the ALJ pointed to Plaintiff's own demonstrated activities and abilities.    (See id. at 24-25); see also 20 C.F.R. § 404.1529(c)(3)(i); SSR 16-3p, 81 Fed. Reg. 14166 at 14169.    The ALJ noted Plaintiff's work activities during the relevant period.    (Doc. 11 at 24-25).    He also cited Plaintiff's report to Dr. Gray in May 2017 that she had recently traveled to Disney World and gone on a roller coaster ride.    (See id. at 24, 878).    In addition, he noted Plaintiff's function report, which indicated that Plaintiff attended her son's sporting events once per week, shopped in stores, drove a car, went outside daily, prepared food or meals daily, cleaned, did

---

[13] In her work history report, Plaintiff stated that she worked as a house manager from 2009 to 2016.  In that job, Plaintiff worked seven hours per day, three to five days per week.  The job involved "very little" sitting but almost constant walking, standing, climbing, stooping, kneeling, crouching, crawling, and/or handling large and small objects.  Job duties including cleaning, cooking, making repairs, ironing, pool maintenance, and making appointments.  Plaintiff "often" had to carry ladders between rooms and also had to lift and carry other items such as clothes baskets, mops, plants, and groceries.  (See Doc. 11 at 199-200).

[14] In order to fully accommodate Plaintiff's impairments, the ALJ added additional limitations not included by Dr. Parker.  These included precluding Plaintiff from climbing ladders, ropes, and scaffolds and allowing her to miss one day per month for headaches.  (See Doc. 11 at 24, 104-05).

laundry, fed pets, did crafts, sat and talked with others, and took care of her husband and children. (See id. at 21-22, 191-95). Plaintiff's medical records also reflect that she reported doing moderate exercise for thirty minutes most days of the week on a number of occasions, including as recently as February 2016. (See id. at 532, 536, 594, 611, 616).

Thus, contrary to Plaintiff's assertion, the ALJ did address her statements concerning the intensity, persistence, and limiting effects of her pain and other alleged symptoms in accordance with the proper standards and found that the statements were not fully consistent with the evidence of record. After making this finding, the ALJ discussed the evidence in detail and articulated several valid reasons for the determination, which are supported by substantial record evidence.[15] Thus, the ALJ did not err in his

---

[15] Although Plaintiff has cited evidence in the record which she claims supports a finding that she is disabled, that is, at best, a contention that the record evidence supports a different finding. That is not the standard on review. The issue is not whether there is evidence in the record that would support a different finding, but whether the ALJ's finding is supported by substantial evidence. See Figueroa v. Comm'r of Soc. Sec., 2017 U.S. Dist. LEXIS 181734, at *15, 2017 WL 4992021, at *5 (M.D. Fla. Nov. 2, 2017) ("Although Plaintiff cites to certain test results, notes, and physical therapy findings as support for her contention that 'there were objective medical findings that support the doctor's opinions about [her] limitations' . . ., this is, at best, a contention that the record could support a different finding. This is not the standard on review. The issue is not whether a different finding could be supported by substantial evidence, but whether this finding is.") (emphasis in original).

evaluation of Plaintiff's allegations of pain, and Plaintiff's claim must fail.

## VIII.    <u>Conclusion</u>

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability and disability insurance benefits be **AFFIRMED.**

**DONE** this **24th** day of **September, 2021.**

/s/ SONJA F. BIVINS
UNITED STATES MAGISTRATE JUDGE
